UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANTE D. ASHLEY,

        Plaintiff,

     v.                                            Case No. 17-C-1785

SHANICE JONES,

        Defendant.

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Dante Ashley, who is currently incarcerated at Waupun Correctional Institution, filed this action under 42 U.S.C. § 1983, alleging that Defendant Shanice Jones, a female correctional officer, violated his constitutional rights by failing to intervene and stop another inmate from assaulting him while he was being held in detention at Milwaukee County Jail (MCJ). Ashley's claim that Jones further violated his rights by her deliberate indifference to his serious medical needs was dismissed at screening and will not be addressed further. *See* Dkt. No. 7 at 4. The case is currently before the Court on Jones' motion for summary judgment, which was filed on March 2, 2020. Dkt. No. 32.

Because it appeared that Ashley was mentally impaired, the Court recruited pro bono counsel for Ashley. However, Ashley has been uncooperative and refused to communicate with the attorney recruited to assist him. After multiple extension requests and a telephone hearing, counsel has now notified the Court that he is unable to obtain Ashley's assistance in prosecuting the matter and will not be filing a response to Defendant's motion. Dkt. No. 54. Plaintiff's failure to respond constitutes adequate grounds to grant the motion, *see* Civ. L.R. 7(d), but it is also clear

from the record before the Court that Defendant is entitled to summary judgment as a matter of law. Therefore, Defendant's motion will be granted, and this case will be dismissed.

## BACKGROUND

Ashley did not respond to Jones' proposed findings of fact. Therefore, the proposed findings are deemed admitted for the purposes of summary judgment. Civil L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment.").

On February 9, 2015, Ashley, who was being detained at MCJ on several charges, including attempted armed robbery, alleges he was assaulted by his cellmate after a verbal altercation with Jones. Compl. at 3–4. On that date, Jones was the only housing officer assigned to work the second shift in Ashley's cell pod. Def.'s Prop. Findings of Fact (DPFOF) ¶¶ 4–5. After dinner, Jones and an inmate worker began distributing linens. *Id.* ¶ 8–9. When Jones reached Ashley's cell, she called his cellmate out to get his linens, whereupon Ashley became angry because he was not scheduled to receive fresh linens. *Id.* ¶¶ 12–13. She informed him that he would not get new linens until he had been there for seven days, and he began yelling at her and using disrespectful language. *Id.* ¶¶ 1, 14–15. Ashley's cellmate asked Jones if she "wanted him to 'take care of' Ashley," to which she responded "no, he good." Compl. at 4; DPFOF ¶ 16. Jones moved on to other cells. DPFOF ¶ 17.

Jones heard the two arguing but did not hear anything to alert her that they were physically fighting, including any cries for help from Ashley. *Id.* ¶¶ 18–20. Nevertheless, because she heard them arguing, she called the classification division to ask if they could be separated and then continued moving through the pod. *Id.* ¶ 22. While she was still exchanging linens, she received authorization to move Ashley's cellmate, which she immediately proceeded to do. *Id.* ¶¶ 23–24.

2

Upon arriving at the cell, she saw no indication of a fight, and neither inmate mentioned a fight. *Id.* ¶ 24. Neither inmate appeared to be in distress or showed signs of injury. *Id.* She moved Ashley's cellmate to another cell and finished the linen exchange. *Id.* ¶¶ 24, 38. Between the end of linen exchange at 8:19 p.m. and lock-in at 9:00 p.m., Jones made five inspections of the pod. *Id*. ¶ 38. Ashley did not notify Jones that he was in any distress or needed medical attention and she did not observe any injuries on Ashley during those inspections. *Id*. ¶ 38.

Sometime after the incident, an unidentified informant reported Ashley's cellmate had assaulted him and an investigation was begun. Ashley initially refused to speak with investigators about what occurred, but he eventually stated that Jones was "out of order" and "didn't have to do what she did." *Id.* ¶ 57. He later acknowledged that Jones had told Ashley's cellmate that she did not want him to take care of the situation, and that Jones "probably did not know that would happen because the two of them had been in the cell for the last two days and had not had any problems." *Id.* ¶¶ 60–61, 65. Jones had not met Ashley or his cellmate prior to February 9, 2015, and she had received no prior reports of threats toward Ashley or violence by his cellmate to alert her to the potential for a fight. *Id.* ¶¶ 26, 28–31. Additionally, Jones asserts that she was used to inmates showing disrespect to officers and was not angered by Ashley's actions. *Id.* ¶¶ 35–36. She had expected Ashley's cellmate to follow her instructions to leave him alone. *Id*. ¶ 37.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal

3

quotation marks omitted)). Where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there is no genuine dispute on material facts and summary judgment should be entered against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## ANALYSIS

Plaintiff Ashley alleges that Jones violated his constitutional rights by failing to intervene to prevent his cellmate from assaulting him. In essence, Ashley claimed that Jones was deliberately indifferent to the serious threat to his safety posed by his cellmate when she let him back in their cell. Because Ashley was in pretrial detention at the time of the incident, his rights arose under the Due Process Clause of the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015); *Miranda v. County of Lake*, 900 F.3d 335, 352–53 (7th Cir. 2018). In order to state a claim for a constitutional violation, Ashley must establish deliberate indifference to his safety; namely, he must allege that a prison official "knows of and disregards an excessive risk to inmate health or safety. . . ." *Pavlick v. Mifflin*, 90 F.3d 205, 208 (7th Cir. 1996). After all, a correctional officer cannot act with deliberate indifference toward a threat she does not even know exists. "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Here, there is not even evidence of negligence on the part of Officer Jones.

In order to defeat summary judgment, Ashley must show that Jones had some awareness of the threat Ashley's cellmate posed to him and failed to take reasonable actions to protect him. Although Ashley implies that Jones encouraged his cellmate to attack him and asserts that she then failed to intervene to protect him from such an attack, the undisputed material facts show the

4

opposite. The undisputed evidence establishes that Officer Jones did not create a danger to Ashley, but instead affirmatively sought to diffuse any potential danger. When Ashley yelled at her and called her a name, Ashley's cellmate asked her if she wanted him to "take care of it," to which she responded "no, he good." Compl. at 3–4, DPFOF ¶ 16. She stated in sworn testimony that she expected Ashley's cellmate to comply with her instructions to let it go. DPFOF ¶ 37. Even so, when she heard them verbally arguing after she had moved on, she immediately moved to separate them to prevent any conflict by requesting permission to relocate one of them to a new cell. DPFOF ¶ 22.

When the fight actually occurred, she could not have reasonably been expected to intervene. Ashley and his cellmate apparently fought after Jones had moved on to continue handing out bedding to other inmates. There is no evidence she either saw or heard anything that would lead her to know there was a physical fight occurring between Ashley and his cellmate. When she received permission to move Ashley's cellmate, she immediately returned to do so, and saw no indication that there had been a fight. *Id.* ¶¶ 19–21, 24. There is no evidence that Jones created or exacerbated a danger to Ashley, and then deliberately failed to protect him from that danger. Thus, Ashley has failed to state a claim against Ashley under the Fourteenth Amendment and Jones is entitled to summary judgment.

## CONCLUSION

For the reasons explained herein, Defendant's motion for summary judgment (Dkt. No. 32) is **GRANTED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 9th day of March, 2021.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge

This order and the judgment to follow are final. The plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If the plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If the plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

6

Case 2:17-cv-01785-WCG   Filed 03/09/21   Page 6 of 6   Document 55